UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                                          ) Case No. _____
                                                               )
                                                               ) NOTICE OF MOTION FOR
                                                               ) RELIEF FROM AUTOMATIC
                                                               ) STAY IN A CHAPTER 11/12 CASE,
Debtor(s)                                                      ) AND OF HEARING THEREON

**YOU ARE NOTIFIED THAT**:

1. A motion was filed by, _____, for the relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

2. The name and address of the moving party's attorney (or moving party, if no attorney) are:


3. If you WISH TO RESIST the motion YOU MUST, WITHIN 14 DAYS OF THE SERVICE DATE SHOWN BELOW, file <u>BOTH</u> a written response with the Clerk of the Bankruptcy Court AND a certificate showing a copy of the response has been served on the moving party's attorney.

4. <u>Contents of Response</u>.  A response must state the facts upon which relief from the automatic stay is resisted.  See <u>Local Form #720.50</u> for details.

5. **IF you file a timely RESPONSE**:

   a. A HEARING on the motion WILL BE HELD **ON** _____(date), **AT**_____(time), and it will be held *[MARK AND COMPLETE <u>ONE</u>]*:

      **IN** _____
      _____(location).

   or

      **VIA** a "Meet-Me" style telephone hearing *[MARK the appropriate box AND ENTER the 3-digit ID No.].*  **ALL** parties are **REQUIRED, NO LATER THAN THE HEARING TIME SHOWN ABOVE, TO CALL IN** as instructed in the section marked below.  [**NOTE**: ALL participants MUST COMPLY WITH EACH requirement listed on <u>Local Form #Meet-Me</u>].

      [If the 5-digit portion of the Case No. begins with "3" or "4"] Call **503-326-6337**.  When connected, **ENTER** the **3-digit** *ID No*. _____ *followed by* the "**#**" key.

      [If the 5-digit portion of the Case No. begins with "6" or "7"] Call **541-431-4045**.  When connected, **ENTER** the **3-digit** *ID No*. _____ *followed by* the "**#**" key.

   b. NO TESTIMONY will be taken at the hearing.

6. **If a timely response is NOT filed**, then either:

   a. The court may sign an ex parte order, submitted by the moving party, granting relief from the stay;

<u>OR</u>  b. The stay will expire under the terms of 11 USC §362(e) 30 days after the motion was filed.

                                                     CLERK, U.S. BANKRUPTCY COURT
                                                     (i.e., if the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; <u>OR</u> if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401)

I certify that on _____ copies of (1) this Notice, (2) Local Form #720.50 if this Notice was served on paper, (3) Local Form #Meet-Me if this Notice was served on paper and a "Meet-Me" style telephone hearing will be held,  AND (4) the Motion, were served on the Debtor(s), U.S. Trustee, AND ON THE FOLLOWING PARTIES, if any:  Trustee, Creditors' Committee Chairperson, and their respective attorneys.

                                                     _____
1124 (4/15/09)                                       Signature of Moving Party or Attorney

| | |
|---|---|
| 1 | Steven M. Hedberg, OSB No. 842440<br>SHedberg@perkinscoie.com |
| 2 | Jeanette L. Thomas, OSB No. 980420<br>JThomas@perkinscoie.com |
| 3 | PERKINS COIE LLP<br>1120 N.W. Couch Street, Tenth Floor |
| 4 | Portland, OR  97209-4128<br>Telephone:  503.727.2000 |
| 5 | Facsimile:  503.727.2222 |
| 6 | Attorneys for Loyal Land, LLC |

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| 11 | In re | No. 11-31897-tmb11 |
| 12 | THORNBURGH RESORT COMPANY, LLC, | **LOYAL LAND, LLC'S MOTION FOR RELIEF FROM STAY** |
| 13 | Debtor. | |

Loyal Land, LLC ("<u>Loyal</u>") files this Motion for Relief from Stay (the "<u>Motion</u>") pursuant to Section 362(d) of the Bankruptcy Code, Rules 4001 and 9014 of the Federal Bankruptcy Rules, and Local Bankruptcy Rule 4001-1, to allow Loyal to resume foreclosure of the lien secured by that certain real property and improvements commonly referred to as TBD Cline Falls Road, Redmond, Oregon 97756, as more particularly described below (the "<u>Property</u>"), owned in part by the Thornburgh Resort Company, LLC (the "<u>Debtor</u>").  The grounds for relief are that, pursuant to Section 362(d)(1), cause exists for terminating the automatic stay and pursuant to Section 362(d)(2), relief from stay should be granted because the Debtor lacks equity in the Property and the Property is not necessary for an effective reorganization.  Alternatively, Loyal moves for dismissal of this case under Section 1112(b) for

PAGE 1- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

91004-0005/LEGAL20463404.1

lack of good faith in its filing. This Motion is supported by the Declarations of Terry Larsen (the "Larsen Decl."); and Jeffrey Parker (the "Parker Decl.").

## I.    FACTS

1.    The Property at issue consists of real property in Redmond, OR, that was to be used to develop as a destination resort community. The Property is currently undeveloped and the Debtor has spent six years in its attempt to obtain the appropriate land use permits and approvals to develop the Property as a resort under Oregon law. As set forth in more detail below, the Property was pledged to Loyal as collateral for a loan now held by Loyal. This bankruptcy case was filed just *68 minutes* before the non-judicial foreclosure sale under Loyal's deed of trust, for the sole purpose of stopping the sale. The Property remains subject to Loyal's lien and Loyal seeks relief from stay to resume foreclosure proceedings.

**A.    The Investment Agreement**

2.    On or about April 30, 2007, PGI lent the Debtor $1,500,000, which was secured by a deed of trust on a portion of the Property. Thereafter, on June 5, 2007, the Debtor, PGI, Kameron DeLashmutt ("DeLashmutt"), Jeffrey Parker ("Parker") and Bill Wilt ("Wilt") entered into an investment agreement (the "Investment Agreement"). Pursuant to the terms of the Investment Agreement, PGI agreed to lend the Debtor an additional $9,000,000 and to assist the Debtor in obtaining additional loans for completion of the proposed resort development of approximately $20 million. Parker Decl., ¶3.

3.    PGI ultimately lent the Debtor approximately $11,500,000 in three different loans, secured by two deeds of trust on a portion of the Property (collectively, the "PGI Loan"). PGI subordinated its security interest in the Property to a bridge loan made by Action Mortgage, a subsidiary of Sterling Savings Bank ("Sterling"). As of February 28, 2011, PGI was owed $13,823,392.67 under the PGI Loan, which was comprised of $11,658,662.61 in principal and $2,164,730.06 in interest, plus attorney fees and expenses. Interest continues to accrue on the PGI Loan and PGI has incurred additional expenses. Parker Decl., ¶4.

PAGE 2-    LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

4. As additional security for the loans contemplated by the Investment Agreement, the Debtor conveyed to PGI an undivided five percent ownership interests in the land that is expected to comprise the Tribute Village portion of the resort and a 50% ownership interest in the land that was to comprise the Pinnacle Village portion of the resort. Parker Decl., ¶5.

5. The Investment Agreement was amended three times, with the final amendment occurring on November 20, 2007. The primary purpose of the amendments was to extend the deadline for the Debtor to secure a bridge loan and to reduce the amount of the bridge loan from a third party lender. The lender ultimately selected by the parties, Action Mortgage, refused to lend funds to the Debtor and required that the borrower be PGI. In the final amendment, the parties agreed that all funds borrowed by PGI under the bridge loan would be immediately passed through to the Debtor. Parker Decl., ¶6; Ex. A.

**B. The Secured Loan**

6. On or about November 19, 2007, Action Mortgage, an affiliate of Sterling made a loan to PGI in the original principal sum of $10,956,000 (the "Loan"). As evidence of the indebtedness resulting from the Loan, PGI made, executed and delivered to the Sterling a Promissory Note (the "Note") in the original principal amount of $10,956,000. Parker Decl., ¶7., Ex. B.

7. The Loan was secured by, Deed of Trust dated November 19, 2007 (the "DOT"), and recorded on November 26, 2007, Book 2007 Page 61125 of Official Records in the office of the Recorder of Deschutes County, Oregon, from PGI and Debtor as to Parcels 1 through 6 and John E. Evenson and Barbara L. Evenson, such as to an undivided 50% interest, as to an undivided 49% interest as to parcel 6 only, as Grantors, to Fidelity National Title Insurance Company, Trustee to secure an obligation in favor of Sterling. Parker Decl., ¶8, Ex. C.

8. On March 2, 2011, Sterling transferred its interest in the Loan, the DOT and all related agreements and security to Central Oregon Investment Holdings, LLC ("COIH"). Parker

PAGE 3- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Decl., ¶9. Ex. D.  COIH in turn assigned its interest in the Loan, the DOT and all related agreements and security to Loyal on that same date.  Larsen Decl. ¶3, Ex. A; Parker Decl., ¶9, Ex. E.  The Note, the DOT and the other instruments evidencing, securing, or relating to the Loan are hereinafter collectively referred to as the "Loan Documents."

### C. Borrower's Default and Commencement of Foreclosure

9. Debtor defaulted on its obligations to PGI under the Investment Agreement, which caused PGI to default under the Note, the DOT, and the other Loan Documents by, among other things, failing to pay the principal balance of the Note due at maturity, together with accrued and accruing interest, default interest, charges, fees and costs.  Parker Decl., ¶10.  As of March 11, 2011, the amount due and owing to Loyal under the Note was no less than $12,554,665.78, which was comprised of principal in the amount of $10,955,999.50, accrued but unpaid interest in the amount of $1,522,884.00, late charges in the amount of $75,657.28, title fees in the amount of $125.00, plus all attorney fees and costs incurred by Loyal.  Larsen Decl., ¶4, Ex. B.  As a result of borrower PGI's defaults, Sterling caused (i) a Notice of Default to be issued to PGI and Debtor, commencing non-judicial foreclosure proceedings pursuant to ORS Sections 86.735 et seq., and (ii) a Notice of Trustee's Sale to be recorded and served, scheduling a trustee's sale for March 11, 2011 at 1:00 p.m.  Parker Decl., ¶10.  The foreclosure has been rescheduled for April 8, 2011 at 1:00 p.m., but is obviously subject to the Court's granting of this Motion.  Larsen Decl. ¶4, Ex. C.

### D. Property Development Issues

10. The Property is currently undeveloped.  The Debtor originally sought to obtain land use approval from Deschutes County in 2005 for a destination resort complex involving several championship golf courses, one or more hotels, various amenities, and approximately 1,150 single family home sites.  Parker Decl., ¶11.

11. The land use approval process has been very protracted and has involved multiple trips to the Oregon Land Use Board of Appeals ("LUBA"),three trips to the Oregon Court of

PAGE  4-  LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  Appeals and one trip to the Oregon Supreme Court. . Currently, the matter has been remanded
2  to Deschutes County for changes pursuant to the most recent Court of Appeals ruling.
3  Specifically, the Court of Appeals affirmed LUBA's finding that the Debtor's proposed wildlife
4  habitat and mitigation plan is not likely and reasonably certain to result in compliance with
5  Deschutes County requirements. Accordingly, in the remand proceedings, the Debtor must
6  submit substantial credible evidence from qualified experts that demonstrates that the applicable
7  standards have been met. Upon information and belief, the proposed revisions must be filed with
8  Deschutes County no later than August, 2011. It is not clear what actions, if any, the Debtor has
9  taken to comply with this deadline for the substantive submittal. Moreover, since compliance is
10 subject to further appeal, the County entitlement process may drag on even further, particularly
11 since the approval of the final master plan is not the final decision in the land use approval
12 process. Parker Decl., ¶12.

13    12.    If the revisions are not filed when due, the land use approval process will need to
14 be recommenced by a new third party. Given new and potential legislative changes since the
15 original application for land approval, it is very unlikely that the requisite approval could be
16 obtained in the near term or without great expense. Parker Decl., ¶13. More importantly, the
17 inability to proceed on remand will result in the loss of the law of the case doctrine, which
18 prevents new issues from being raised in subsequent appeals based on the current remand.

19    13.    If the appropriate land use approvals are obtained to develop the Property into a
20 destination resort, conservative estimates are that construction costs will run at least $300 million
21 to complete the resort as originally envisioned. Parker Decl., ¶14. Even if the resort was done in
22 phases, the first phase alone would cost approximately $100 million because of the significant
23 infrastructure that must be built and the land use requirements.

PAGE  5-  LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## II. LEGAL ANALYSIS

### A. Section 362(d)(1) – Cause; Lack of Adequate Protection

14. Section 362(d)(1) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
> (1) for cause, including lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). Cause exists to lift the automatic stay because the Debtor has no assets, other than the Property, in which there is no equity, no business operations, no source of funding, and no ability to satisfy its obligations to Loyal or to effectively reorganize. Additionally, as set forth below, the fact that this case was filed in bad faith is independent cause for relief from stay under Section 362(d)(1) as well as cause for dismissal of the case under Section 1112(b).

15. The Debtor is not in any position to provide Loyal with adequate protection of its interests in the Property. The Debtor does not have any operating cash and it is unlikely that a third party would provide the Debtor with debtor in possession financing without a security interest. However, given the current level of debt on the Property, the uncertainty of the land use approval process and the cost of construction, it is unlikely that any level of financing could be obtained that would allow the Debtor to complete the proposed project.

16. Furthermore, failure to grant Loyal relief from the automatic stay to pursue the pending foreclosure poses very serious risks to Loyal that the Property will be worth less than the amount owed to Loyal. Failure to complete the land use permit process during the appropriate time period will prove catastrophic. Because the Debtor has no funds to pursue such approval and the deadline for compliance is just a few short months away, any delay could cause substantial harm. Loyal should be given relief from stay so that it may pursue the land use approvals and attempt to preserve the value of its collateral.

PAGE 6- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

B. **Section 362(d)(2) – Lack of Equity**

17. Section 362(d)(2) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
>
> (2) with respect to a stay of an act against property under [section 362(a)], if -
>
> (A) the debtor does not have any equity in such property; and
>
> (B) such property is not necessary for an effective reorganization.

11 U.S.C. § 362(d)(2).

18. In this case, although the Debtor has not yet filed its schedules and statement of financial affairs, and despite its failure to include any of the parties asserting liens on the Property on the list of 20 largest creditors, the Debtor has no equity in the Property in its current state. The Property is currently encumbered by approximately $28 million in debt, not including interest, attorney fees, costs and expenses. The liens against the Property include:

| Beneficiary | Date | Amount |
|---|---|---|
| Loyal Loan | (see above) | $12,554,665.78 |
| PGI Loan | (see above) | $13,823,392.67 |
| Charles B. Price and Cheryl J. Price | April 20, 2005 | $220,000.00 |
| Genesis Development Group, LLC | June 26, 2007 | $375,208.33 |
| Agnes Delashmutt | March 16, 2009 | $70,000.00 |
| Agnes Delashmutt | April 17, 2009 | $60,000.00 |
| Agnes Delashmutt | May 29, 2009 | $867,000.00 |
| Real Property Taxes | 2008-2009 through 2010-2011 | $29,411.88 |
| Tax Warrants | 2009 -2010 | $7,601.69 |
| Federal Tax Lien | February 9, 2010 | $14,168.74 |
| Hickman Williams and Associates | Construction Lien dated March 10, 2010 | $127,815.87 |
| | | $28,149,264.96 |

19. The Property in its current state, i.e. without land use entitlements, has relatively little value. If the Property were not developed as a destination resort one of its highest and best use is as grazing or ranch land. Values for ranch or grazing land range from $500 to $750 per

PAGE 7- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

91004-0005/LEGAL20463404.1

1   acre. At approximately 2,000 acres, the Property would have a value between $1,000,000 and

2   $1,500,000. Parker Decl., ¶15. That value is substantially less than the amount of all liens. See

3   Stewart v. Gurley, 745 F.2d 1194, 1195 (9th Cir. 1984) (holding that when determining whether

4   debtor has equity in property, all liens, not just lien of movant, are considered).

5       20.   Moreover, of critical importance to any development of this nature are water

6   rights. Loyal understands that the water rights that were attached to the Property have been

7   transferred to Kameron DeLashmutt's mother, or an entity owned by the Kameron DeLashmutt's

8   mother, thus removing a valuable and critical asset. The facts of this transfer are not fully known

9   but it may be that such transfer is a fraudulent transfer and that those rights could be recovered

10  for the estate. Absent such rights, the value of the Property is significantly reduced. Parker

11  Decl., ¶16.

12      21.   The other issue under Section 362(d)(2), on which the Debtor has the burden of

13  proof, is whether the Property is "necessary to an effective reorganization." United Savings

14  Association v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 376-77, 108 S. Ct. 626,

15  632-33 (1988). Property cannot be necessary to an *effective* reorganization if there is no

16  reasonable likelihood that a debtor can be rehabilitated. See, e.g., In re Kruth Ranch, 97 B.R. 33,

17  36 (Bankr. D. Mont. 1989).

18      22.   In this case, Debtor has no source of revenue. The Debtor is not operating. Aside

19  from pursuing the land use approvals, no action has been taken by the Debtor. As evidenced by

20  the liens that exist against the Property and list of 20 largest, it is clear that the Debtor has not

21  actually been able to pay for its operations but instead has been incurring debt well beyond its

22  ability to pay. Although the list of 20 largest creditors discloses unsecured debt of

23  $11,116,324.00, this is not the full amount of unsecured debt owed by the Debtor. Loyal

24  understands that there are 8 more founders interests, at $500,000 each, plus additional amounts

25  owed to other professionals and creditors. As a result there is likely another $5-6 million at least

26

PAGE  8-   LOYAL LAND, LLC'S MOTION FOR RELIEF FROM
           THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

1 that will be added to this amount. With secured debt of $28,149,264.96 and unsecured debt of at

2 least $45 million, no ability to obtain financing to pay off the amounts owed to Loyal or to PGI

3 under the PGI Loan, there is no hope for reorganization. Instead, this was merely a last ditch

4 effort to avoid the inevitable foreclosure.

5       23. Because Debtor has no equity in the Property and no realistic ability to effectively

6 reorganize, relief from stay under Section 362(d)(2) is appropriate.

**C. The Debtor's Bad Faith Filing Constitutes Cause for Relief From Stay and Dismissal of the Case**

8       24. As the 9th Circuit has stated:

> The bankruptcy court may dismiss a Chapter 11 case "for cause" pursuant to 11 U.S.C. § 1112(b). Although section 1112(b) does not explicitly require that cases be filed in "good faith," courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal. *See, e.g., In re Little Creek Dev. Co.,* 779 F.2d 1068, 1072 (5th Cir.1986); *Stolrow's,* 84 B.R. at 170; *In re N.R. Guaranteed Retirement, Inc.,* 112 B.R. 263, 270 (Bankr.N.D.Ill.), *aff'd,* 119 B.R. 149 (N.D.Ill.1990). "The existence of good faith depends on an amalgam of factors and not upon a specific fact." *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986). The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis. *Id.*

In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994). In this case, the Debtor has no opportunity to reorganize and filed simply to stall Loyal's inevitable foreclosure sale. Under these circumstances, cause exists to dismiss the case under Section 1112(b).

      25. Furthermore, "[i]t is well established law in the Ninth Circuit, as well as in various other circuits, that lack of 'good faith,' or existence of 'bad faith' in commencing and/or prosecuting a bankruptcy case, constitutes 'cause' . . . for granting relief from stay pursuant to 11 U.S.C. 362(d)." In re Walter, 108 B.R. 244 (Bankr. C.D. Cal. 1989), citing, inter alia, In re Arnold, 806 F.2d 937, 939 (9th Cir. 1986); In re Can-Alta Properties, Ltd., 87 B.R. 89, 91 (9th Cir. B.A.P. 1988). As the BAP found in Can-Alta, among the indicia of bad faith are:

> (1) The debtor has one asset, such as a tract of undeveloped or developed real property. (2) The secured creditors' liens encumber this tract. (3) There are generally no employees except for the principals, (4) little or no cash flow, and no available sources of income to sustain a plan of

PAGE 9- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

91004-0005/LEGAL20463404.1

reorganization or to make adequate protection payments pursuant to 11 U.S.C. Sections 361, 362(d)(1), 363(e) or 364(d)(1). (5) Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. (6) The property has usually been posted for foreclosure because of arrearage on the debt and the debtor has been unsuccessful in defending actions against foreclosure in state court. (7) Alternatively, the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. (8) Bankruptcy offers the only possibility of forestalling loss of the property. (9) There are sometimes allegations of wrongdoing by the debtor or its principal. (10) The 'new debtor syndrome" in which a one-asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

Can-Alta, 87 B.R. at 91 (quoting Matter of Little Creek Dev. Co., 779 F.2d 1068, 1073 (5th Cir. 1986)).

26. Virtually all of the Can-Alta factors apply to this case:

(1) The Debtor has not yet filed its Schedules, but it is unlikely given the level of debt that they will indicate that any significant asset other than the Property and the yet unobtained land use permits.

(2) The Property is over-encumbered by Loyal's lien and various other liens.

(3) To the best of Loyal's knowledge, the Debtor currently has no employees except for Kameron DeLashmutt, one of the principals of the Debtor.

(4) The Debtor has no prospects for paying off the amount owing on the Note, which has fully matured.

(5) Unlike in Can-Alta, the Debtor actually has significant unsecured debt. However, the Debtor has no ability to repay this debt.

(6) Loyal commenced the nonjudicial foreclosure process and Debtor offered no defense to the scheduled sale; it filed a bare bones filing only **68 minutes** before scheduled sale hour.

(7) The seventh factor is not applicable in this case. There was no state court litigation, just the nonjudicial foreclosure.

(8) The Debtor has filed its bankruptcy petition in order to "buy time" in which to search for a means of paying off its obligations. Given the current real estate market, the glut of resort properties for sale in Central Oregon, the Debtor's prospects are at best dim.

(9) In this case, the Debtor appears to have transferred the valuable water rights to an insider third party prior to the bankruptcy filing.

(10) While the entity was not created on the eve of foreclosure, it is a single-purpose entity whose filing of this case was solely to stall Loyal's rights to foreclose on the Debtor's only asset.

PAGE 10- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1     27.    When the <u>Can Alta</u> factors are applied, this case meets the criteria of a bad faith filing, constituting "cause" for granting relief from stay pursuant to Section 362(d)(1) of the Bankruptcy Code.

### III.    CONCLUSION

28.    For the foregoing reasons, Loyal requests that the Court enter an order terminating the automatic stay so that Loyal may proceed with its foreclosure and exercise all other remedies available with respect to the Property under applicable non-bankruptcy law. Alternatively, Loyal requests that this Court enter an order dismissing this case for cause.

DATED: March 22, 2011

By:/s/ Steven M. Hedberg
Steven M. Hedberg, OSB 842440
SHedberg@perkinscoie.com
Jeanette L. Thomas, OSB No. 980420
JThomas@perkinscoie.com
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Attorneys for Loyal Land, LLC

PAGE 11- LOYAL LAND, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY

91004-0005/LEGAL20463404.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

**CERTIFICATE OF SERVICE**

The ECF Participants listed below were registered with the Court to receive electronic notification of the **LOYAL LAND, LLC'S MOTION FOR RELIEF FROM STAY** as of the date shown below:

- Gary U. Scharff on behalf of Debtor - gs@scharfflaw.com

- Justin D. Leonard on behalf of Creditor Amy Mitchell, Trustee for Bankruptcy Estate of Robert L. and Lynn C. Keys, D. Or. Bk. Case No. 10-34294-tmb7 - jleonard@bjllp.com, jweisenbach@balljanik.com

- US Trustee, Portland - USTPRegion18.PL.ECF@usdoj.gov

Dated this 22nd day of March, 2011

PERKINS COIE LLP

/s/ Steven M. Hedberg
Steven M. Hedberg, OSB 842440

Attorneys for Loyal Land, LLC

PAGE 1- CERTIFICATE OF SERVICE

91004-0005/LEGAL20463404.1

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222